**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

STEPHEN HALE,

    Plaintiff,

    v.

XILINX, INC., DENNIS SEGERS, VICTOR PENG, RAMAN CHITKARA, SAAR GILLAI, RONALD S. JANKOV, MARY LOUISE (ML) KRAKAUER, THOMAS H. LEE, JON A. OLSON, and ELIZABETH VANDERSLICE,

    Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

---

Plaintiff Stephen Hale ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Xilinx, Inc. ("Xilinx" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Xilinx by Advanced Micro Devices, Inc. ("AMD") and Thrones Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of AMD.

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has substantial operations in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Xilinx common stock.

7. Defendant Xilinx designs and develops programmable devices and associated technologies worldwide. The Company is incorporated in Delaware and owns a 130,000 square foot facility in Longmont, Colorado. The Longmont facility serves as a primary location and data center for the Company's software efforts in the areas of research and development, manufacturing and quality control. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "XLNX."

8. Defendant Dennis Segers ("Segers") is Chairman of the Board of the Company.

9. Defendant Victor Peng ("Peng") is Chief Executive Officer and a director of the Company.

10. Defendant Raman Chitkara ("Chitkara") is a director of the Company.

11. Defendant Saar Gillai ("Gillai") is a director of the Company.

12. Defendant Ronald S. Jankov ("Jankov") is a director of the Company.

13. Defendant Mary Louise (ML) Krakauer ("Krakauer") is a director of the Company.

14. Defendant Thomas H. Lee ("Lee") is a director of the Company.

15. Defendant Jon A. Olson ("Olson") is a director of the Company.

16. Defendant Elizabeth Vanderslice ("Vanderslice") is a director of the Company.

17. Defendants Segers, Peng, Chitkara, Gillai, Jankov, Krakauer, Lee, Olson, and Vanderslice are collectively referred to herein as the "Individual Defendants."

18. Defendants Xilinx and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On October 27, 2020, Xilinx and AMD announced that they had entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction. Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction. The press release states, in pertinent part:

> **AMD to Acquire Xilinx, Creating the Industry's High Performance Computing Leader**
>
> October 27, 2020 06:31 ET | **Source:** Advanced Micro Devices, Inc.

*— Strategic transaction strengthens AMD's industry-leading technology portfolio —*

- Expands AMD's rapidly growing data center business
- Xilinx, the No. 1 provider of adaptive computing solutions, increases AMD TAM to $110 billion
- Immediately accretive to AMD margins, cash flow and EPS
- All stock transaction with combined enterprise value of approximately $135 billion

SILICON VALLEY, Calif., Oct. 27, 2020 (GLOBE NEWSWIRE) -- AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion. The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth.

*   *   *

**Additional Transaction Details**
Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction. Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock[2]. Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors. The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions. The transaction is currently expected to close by the end of calendar year 2021. Until close, the parties remain separate, independent companies.

**Management and Board of Directors**
Dr. Lisa Su will lead the combined company as CEO. Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and

strategic growth initiatives, effective upon closing of the transaction. In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

**Advisors**

Credit Suisse and DBO Partners are acting as financial advisors to AMD and Latham & Watkins LLP is serving as its legal advisor. Morgan Stanley is acting as lead financial advisor to Xilinx. BofA Securities is also acting as a financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

\*       \*       \*

**About AMD**

For more than 50 years AMD has driven innovation in high performance computing, graphics and visualization technologies ― the building blocks for gaming, immersive platforms and the data center. Hundreds of millions of consumers, leading Fortune 500 businesses and cutting-edge scientific research facilities around the world rely on AMD technology daily to improve how they live, work and play. AMD employees around the world are focused on building great products that push the boundaries of what is possible. For more information about how AMD is enabling today and inspiring tomorrow, visit the AMD (NASDAQ: AMD) **website**, **blog**, **Facebook** and **Twitter** pages.

**About Xilinx**

Xilinx develops highly flexible and adaptive processing platforms that enable rapid innovation across a variety of technologies - from the cloud to the edge and to the endpoint. Xilinx is the inventor of the FPGA and Adaptive SoCs, designed to deliver the most dynamic processor technology in the industry. We partner with our customers to create scalable, differentiated and intelligent solutions to enable the adaptable, intelligent and connected world of the future. For more information, visit www.xilinx.com.

20.     On December 4, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Registration Statement, which recommends that Xilinx shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Xilinx's and AMD's financial projections; (ii) the financial analyses performed by Xilinx's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities, Inc.

5

("BofA"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Morgan Stanley.

22.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the Xilinx Board of Directors; Xilinx's Reasons for the Merger; (ii) Opinion of Xilinx's Financial Advisors; (iii) AMD Unaudited Financial Projections; and (iv) Xilinx Unaudited Financial Projections.

23.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Xilinx shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Xilinx's and AMD's Financial Projections**

24.     The Registration Statement omits material information concerning Xilinx's and AMD's financial projections.

25.     The Registration Statement provides that, "[i]n connection with the merger, AMD management prepared certain unaudited prospective financial information of AMD for its 2020 through 2023 fiscal years, which AMD management then extrapolated for AMD's 2024 and 2025 fiscal years" (the "AMD projections"). The AMD Projections were, in large part, provided to Xilinx management and to Morgan Stanley and BofA Securities.

26.     The Registration Statement provides that "AMD received certain unaudited prospective financial information concerning Xilinx for fiscal years 2021 through 2025, which AMD management adjusted to moderate the growth rate to reflect the competitive environment and to provide for a December year end" (the "AMD adjusted Xilinx projections").

27.     The Registration Statement, however, fails to disclose the following concerning the AMD projections and AMD adjusted Xilinx projections: (1) all line items underlying (i) Adjusted EBITDA and Adjusted EBITDA unburdened/burdened by SBC, (ii) Adjusted EPS and Adjusted EPS unburdened/burdened by SBC, and (iii) unlevered free cash flow; (2) Xilinx's and AMD's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

28.     The Registration Statement provides that "in connection with the merger, Xilinx management shared its five-year long-range plan, which is referred to as the 'LRP.' The LRP is updated each year and reviewed with the Xilinx board of directors in the fiscal year-end timeframe, coinciding with Xilinx year-end procedures. Xilinx shared the LRP projections with AMD and the supporting financial advisors, including BofA Securities, Credit Suisse, DBO and Morgan Stanley[.]" The LRP was then updated to purportedly account for the "COVID-19 pandemic" and the "2020 U.S. Department of Commerce rule changes for trade with Huawei and other customers in China" (the "Updated LRP").

29.     The Registration Statement also provides that "in connection with the merger, Xilinx received certain unaudited prospective financial information concerning AMD for fiscal years 2020 through 2023, which Xilinx management adjusted to moderate the growth rate to reflect the competitive environment" (the "Xilinx adjusted AMD projections").

30.     The Registration Statement, however, fails to disclose the following concerning the LRP, Updated LRP, and Xilinx adjusted AMD projections: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA and Adjusted EBITDA unburdened/burdened by SBC, (iii) Adjusted EPS and Adjusted EPS unburdened by SBC, and (iv) unlevered free cash flow; (2) Xilinx's and AMD's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

31.     When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

32.     The disclosure of the aforementioned information is material because it would provide the Company's shareholders with a basis to project the future financial performances of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 11, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### 2. Material Omissions Concerning the Financial Advisors' Analyses

34. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Morgan Stanley and BofA.

35. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley and BofA in rendering their purported fairness opinions must be fairly disclosed to Xilinx shareholders. The description of Morgan Stanley's and BofA's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Xilinx shareholders are unable to fully understand Morgan Stanley's and BofA's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

#### A. *Morgan Stanley's Analyses*

36. The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Relative Discounted Cash Flow Analysis*": (1) all line items underlying the stand-alone unlevered after-tax free cash flows that AMD and Xilinx were forecasted to generate during the fourth quarter of calendar year 2020 through calendar year 2031, in the case of AMD, and during the second-half of fiscal year 2021 through fiscal year 2032 in the case of Xilinx; (2) the terminal values of both AMD and Xilinx; (3) the individual inputs and assumptions underlying the (i) terminal EBITDA multiples ranging from 11.0x to 15.0x and (ii) discount rates ranging from 8.3% to 10.3%, in the case of AMD, and 6.8% to 7.8%, in the case of Xilinx; and (4) AMD's and Xilinx's net debt.

37. The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Relative Discounted Equity Value Analysis*": (1) all line items underlying the earnings

9

per share of AMD and Xilinx that were utilized by Morgan Stanley in its analysis; and (2) the individual inputs and assumptions underlying the (i) P/E multiples and (ii) discount rate of 9.3%, in the case of AMD, and 6.8%, in the case of Xilinx.

38.     With respect to Morgan Stanley's "*Relative Public Trading Multiples Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies observed by Morgan Stanley in its analysis.

39.     With respect to Morgan Stanley's "*Precedent Premia Analysis*," the Registration Statement fails to disclose each transaction and the individual premiums paid therein.

40.     With respect to Morgan Stanley's "*Relative Equity Research Analysts' Future Price Targets*," the Registration Statement fails to disclose: (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

### B.  *BofA's Analyses*

41.     With respect to BofA's "*Selected Publicly Traded Companies Analysis*" of Xilinx and AMD, and BofA's "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies and transactions observed by BofA in its analyses.

42.     The Registration Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*" of Xilinx and AMD: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Xilinx was forecasted to generate during Xilinx's third and fourth quarters of fiscal year 2021 and fiscal years 2022 through fiscal year 2032; (2) all line items underlying the standalone unlevered, after-tax free cash flows that AMD was forecasted to generate during AMD's fourth quarter of fiscal year 2020 and fiscal years 2021 through 2031; (3) the terminal values for Xilinx and AMD; and (3) the individual inputs and assumptions underlying

10

the (i) perpetuity growth rates of 2.75% to 3.25% and of 3.50% to 4.00%, and (ii) discount rates ranging from 6.5% to 8.5% and from 8.50% to 10.50%.

43. With respect to BofA's analysis of equity research analyst price targets for Xilinx common stock and AMD common stock, the Registration Statement fails to disclose: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

44. The Registration Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

45. The Registration Statement provides that:

Xilinx has agreed to pay Morgan Stanley a transaction fee of $70 million, which is contingent upon the closing of the merger, and up to an additional $40 million based on a calculation structure determined by the value of Xilinx's shares in the merger (as measured by the trading price of the AMD common stock received in the merger). $5 million of the transaction fee was paid upon the public announcement of the merger and the remainder of which is contingent upon the closing of the merger.

46. It is unclear what the total transaction fee due to Morgan Stanley is. Defendants state that Morgan Stanley is due a transaction fee of $70 million which is "contingent upon the closing of the merger." But Defendants also state that $5 million of the transaction fee was paid when the merger was announced, the remainder of which is "contingent upon the closing of the merger." It is thus unclear whether the total "transaction fee" (excluding the potential additional $40 million based on a calculation structure) is $75 million ($5 million already paid and an additional $70 million that is contingent) or $70 million ($5 million already paid and an additional $65 million that is contingent). Considering this another way, it is unclear why Morgan Stanley was already paid $5 million of the transaction fee if, as the Registration Statement provides, Morgan Stanley's *entire* $70 million fee (excluding the potential additional $40 million) is

11

contingent upon the closing of the merger. Accordingly, the Registration Statement fails to adequately disclose the nature and amount of Morgan Stanley's transaction fee, including what amount is contingent and what amount was paid upfront.

47. The Registration Statement further fails to disclose the circumstances under which Xilinx will pay Morgan Stanley "an additional $40 million," including the details of the "calculation structure" underlying the basis for such a fee.

48. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

53.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

58.     Each of the Individual Defendants was provided with or had unlimited access to

13

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 11, 2020                                      Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.

667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

16